IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

KATHY BROWN and
MARILYN JONES                                                          PLAINTIFFS

vs.                                      Case No. 4:19-cv-43

LITTLE ROCK SCHOOL DISTRICT,
A Public Body Corporate                                               DEFENDANT

<u>ORDER</u>

Plaintiffs Kathy Brown and Marilyn Jones are former employees of the Little Rock

School District (LRSD).  They have LRSD for age and race discrimination and for retaliation.

LRSD has moved for summary judgment on all claims.  (Doc. No. 15).  Plaintiffs have

responded, and LRSD has filed a reply.  For the reasons stated below, the motion for summary

judgment is granted.

<u>Background</u>[1]

Stephanie Walker-Hynes was hired by the LRSD into the position of Director of Child

Nutrition on September 18, 2017.  Jones was one of three supervisors in Child Nutrition who

reported directly to Walker-Hines.  Brown was the network specialist who was assigned to Child

Nutrition; she denies that she was under Walker-Hynes's direct supervision, but Walker-Hynes

made her termination recommendation.[2]  All three women were long-time employees of LRSD,

are African American , and are over the age of forty.[3]  In November of 2017, both Brown and

---

[1] Taken from Plaintiffs' Response to the Defendant's Statement of Undisputed Material Facts
(Doc. No. 20) unless otherwise stated.
[2] Brown maintains that she was under the supervision of John Ruffins in the technology
department.
[3] During the relevant time, their approximate ages were: Walker-Hynes, 49; Brown, 57; and
Jones, 64.

Jones made separate complaints of harassment and bullying against Walker-Hynes to LRSD. Jordan Eason in the LRSD Department of Human Resources (HR) met with them both in December 2017 to discuss their complaints.  Eason referred both complaints to the LRSD Department of Safety and Security, and they were investigated by Don Allen.[4]

As part of his investigation, Allen reviewed the emails between HR and Brown, Jones, and Walker-Hynes from November 2017 until January 2018 as well as Eason's notes on her December meeting with Plaintiffs.  He also reviewed a document authored by Walker-Hynes following a January 10, 2018 staff meeting that listed twenty-one comments made by Brown that Walker-Hynes considered disrespectful and disruptive.  Allen spoke with all the attendees of that meeting, and they all reported that they had heard Brown make the comments.  Several supervisors at the staff meeting told him that this was the first time they had seen a subordinate talk to their superior the way Brown had talked to Walker-Hynes.  Allen met with Brown and her union representative on January 23rd and reviewed forty-three additional documents she submitted to support her complaint.  On January 24th, Allen spoke individually with Jones and the two other supervisors in Child Nutrition.[5]  Allen went to Kings Elementary School on January 25th and interviewed an employee named by Jones as someone that Walker-Hynes asked to falsify information against Jones.  On January 26th he met with Walker-Hynes and reviewed additional documentation she provided.

After his investigation was complete, Allen sent a report to the Director of Safety and Security on January 29th in which he concluded that there was no evidence to support either

---

[4] Allen is African American.
[5] Plaintiffs have testified that Allen did not speak to the supervisors about their complaints but rather asked them about their families and church. They characterize Allen's investigation as a sham.

Plaintiff's harassment and bullying claims against Walker-Hynes. (Doc. No. 15-8).  Moreover, he concluded that both Plaintiffs had "fabricated allegations," that Brown was "untruthful" and that Jones was "disingenuous" regarding Walker-Hynes, that Brown had "blatantly been insubordinate to Walker-Hynes and very defiant," that Brown "created a hostile work environment" and at times had belittled Walker-Hynes, that there was evidence to suggest that Plaintiffs had "deliberately done things to sabotage some of the work within the Child Nutrition Department," and, finally, that there was sufficient evidence to support disciplinary actions including recommendations for termination.

On February 15, 2018, Walker-Hynes recommended to LRSD Superintendent Mike Poore that Brown be terminated "for [her] continual insubordination" and "falsification of a statement attributed to me as your supervisor, and [her] continual resistance to share technology systems, processes and passwords" with Walker-Hynes when requested.  (Doc. No. 15-1).  The following day she recommended that Jones be terminated "for [her] continual insubordination" and "failure to perform all of [her] assigned duties and responsibilities to the level of proficiency." (Doc. No. 15-3) In her termination recommendations, Walker-Hynes gave specific instances of conduct supporting her recommendation, many relating to the January 10 staff meeting.

Superintendent Poore also recommended the termination of both Jones and Brown for the reasons given by Walker-Hynes. (Doc. Nos. 15-2, 15-4). Plaintiffs were each advised their right to a hearing under the Public-School Employee Fair Hearing Act at which they could call witnesses and introduce evidence.  On May 24, 2018, Jones had a hearing before the LRSD Community Advisory Board (CAB); she was represented by counsel.  The CAB unanimously voted that the reasons given by Poore for his termination recommendation were true.  Johnny

Key, Arkansas Commissioner of Education, accepted the CAB's recommendation and terminated Jones effective June 24, 2018.   Brown had her hearing before the CAB on June 14, 2018.  She was also represented by counsel.  The CAB voted unanimously that the reasons given by Superintendent Poore for recommending Brown's termination were true; Brown was terminated by Commissioner Key effective June 22, 2018.

Plaintiffs do not contend that Allen, Superintendent Poore, the CAB, or Commissioner Key discriminated against them because of their age or race or retaliated against them.  Their complaints are directed only to the actions of Walker-Hynes.

<u>Summary Judgment Standard</u>

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Celotex.,* at 327.

The Eighth Circuit has clarified that "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d

1031, 1043 (8th Cir. 2011) (en banc) (quoting *Fercello v. City of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).

Age Discrimination

Both Brown and Jones allege that they were unlawfully discriminated against because of their age, relying on the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.  In the absence of direct evidence of age discrimination, which neither Plaintiffs argues is present, the Court must apply the familiar McDonnell Douglas burden-shifting framework.[6]  To establish a prima facie case of age discrimination, a plaintiff must establish that she (1) is over 40 years old; (2) was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's termination decision.  Ultimately, a plaintiff must prove by a preponderance of the evidence "that age was the but-for cause of the challenged employer decision." *Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021).

Even if the Court assumes that Plaintiffs have established a prima facie case of age discrimination,[7] the District has articulated legitimate, nondiscriminatory reasons for their terminations that are "clear and reasonably specific." *Id.*  Poore's recommendation for Brown's termination was based upon her "insubordination towards her supervisor," her "falsification of a statement regarding [her] supervisor to other supervisors,"[8] and her "continual resistance to sharing technology systems, processes and passwords with" her supervisor" which actions were "all contributions toward the development a toxic culture." (Doc. No. 15-2).  Much of the

---

[6] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).
[7] The District vigorously disputes that Plaintiffs were meeting their job expectations.
[8] According to Poole, Brown accused Walker-Hynes of telling two child nutrition supervisors that the CFO and the Superintendent and instructed Walker-Hynes to fire Brown.

insubordination stems from the January 10, 2018 staff meeting at which Walker-Hynes twice told Brown to "continue entering menus into the system until the new person comes on board and is trained" to which Brown responded that she would "not be complying." After a hearing, the CAB voted unanimously that the reasons cited by Poole for recommending termination were true.

The legitimate, nondiscriminatory reasons cited by Poole for recommending Jones's termination included continual insubordination towards her supervisor and a failure to proficiently perform all her duties and responsibilities.  Specifically, Poole found that Jones "failed to adhere to the submission deadlines for all of the after school ADE on-site reviews," falsified an ADE on-site review report for the Rockefeller school by claiming to have visited the campus on September 19, 2017 when the program did not start until October 3rd, failed to adequately supervise areas of compliance at the schools she was responsible for, failed to inform her supervisor until after the fact that "the Edison system had gone down at Mabelvale Elementary for more than a 3-week timeframe in December," failing to submit paperwork for employees under her supervision that were "no call, no shows," and claiming not to know "how to correct duplicate meals, although this is a routine duty of supervisors."  (Doc. 15-4). These reasons were unanimously found to be true by the CAB.

Neither Plaintiff has established that these reasons were pretext, a burden that "merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 324 (8th Cir. 2020) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc).  To establish pretext, a plaintiff must both discredit an employer's asserted reason for termination *and* show that the circumstances permit drawing the reasonable inference that the real reason for terminating the

plaintiff was unlawful discrimination. *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006); *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803 (8th Cir. 2020). Plaintiff have fallen well short of satisfying their burden of proof as to either.

<u>Race</u>

Plaintiffs also claim they were discriminated against on the basis of their race in violation of Title VII of the Civil Rights of 1964.[9]  Plaintiffs do not point to any direct evidence of race discrimination.  In the absence of direct evidence of race discrimination, the Court applies the McDonnell-Douglas framework.  To establish a prima facie case for race discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination "(for example, similarly situated employees outside the protected class were treated differently)." *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016) (citations omitted).  The first and third factors are uncontested, and the Court will assume without deciding that Plaintiffs have satisfied the second.  However, Plaintiffs have failed to establish the fourth element of a prima facie case.

"[The test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous.  The comparator must be 'similarly situated in all relevant respects.'" *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 808–09 (8th Cir. 2020) (internal citations and quotations omitted).    To qualify as comparators, the individuals "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918

---

[9] Plaintiffs did not select race as basis for discrimination in their EEOC charges, only age. (Doc. No. 15-8, p. 106; Doc. No. 15-9, p. 62). Defendant does not argue that this issue is procedurally defaulted, however, so the Court will not address it.

(8th Cir. 2000); *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 600 (8th Cir. 2020). The

violations or conduct resulting in termination need only be of "comparable seriousness" and not

the "exact same offense." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (citation

omitted).

Plaintiffs attempt to establish an inference of discrimination by arguing that one white

employee, Don Phelps, who was the manager of the warehouse for Child Nutrition, was bad at

his job and yet never got written up or terminated.  Specifically, they argue that Phelps was

"unable to learn the software program" and "was constantly messing up orders for the various

schools."  Plaintiffs testified that the even though several people had complained about Phelps to

Kelsey Bailey, who served as acting director of Child Nutrition before Walker-Hynes was hired

as director, Bailey told them that "regardless of what Don did, nothing was going to be done"

and "he didn't care, if Don messed up or not, nothing was ever going to happen to Don." (Doc.

No. 15-9, pp. 27-28; Doc. No. 15-8, p. 93). From this testimony, Plaintiffs argue that "it is

obvious that the LRSD values its white employees more so than its African American

employees" and "[i]t is obvious that Phelps  . . . received preferential treatment" not shown to

them.  (Doc. No. 21, pp. 20-21).

Here, drawing all reasonable inferences in favor of Plaintiffs, Phelps was not very good at

his job which caused the cafeterias to be short of needed supplies.  There is no evidence that he

suffered any disciplinary action.  However, the fact that an employee makes mistakes and was

not good at his job is not, by a long shot, of comparable seriousness to the intentional conduct for

which Plaintiffs were terminated.  Brown was found to have been blatantly insubordinate,

disrespectful, dishonest, and uncooperative about sharing technology processes and passwords

with her supervisor.  Jones's conduct included being continually insubordinate, falsifying

information in a report, and failing to report "a major technology/accountability issue." Plaintiffs have made no other argument to establish circumstances which might give rise to an inference of discrimination.

Even assuming Plaintiffs had established a prima facie case, LRSD has met its burden of establishing that it had legitimate, non-discriminatory reasons for terminating both Plaintiffs as discussed in the previous section. And, because Plaintiffs have not met their burden of proving that these reasons were not the real reason they were terminated, Plaintiffs have failed to meet their burden of proving pretext. Defendant is entitled to summary judgment on Plaintiffs' claims of race discrimination.

<u>Retaliation</u>

Plaintiffs bring their retaliation claims under Title VII and the ADEA. Like their claims of discrimination, these claims are analyzed by the McDonnel-Douglas framework in the absence of direct evidence. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007). Plaintiffs do not argue that they have direct evidence of a retaliatory motive.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the protected activity and the adverse action. *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011) (citation omitted). "Retaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (alteration omitted) (quoting *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013)).

Regarding the first element, Plaintiffs argue that their termination was in retaliation for complaints they made to LRSD about Walker-Hynes that they were being discriminated against

based on their race and their age.  However, there is no evidence to support this claim.  In Jones's email to HR (Doc. No. 21-2, p. 53), she complains that Walker-Hynes "for some reason has been constantly badgering and threatening my job since the first week of her arrival" with comments like:  "I will be the one who write your evaluation so keep that in mind;"  "The department might be going to a management company, so who do you thin[k] will make the recommendation for who stays or go[es];" and "Do I need to start a paper trail on you?" *Id.* Jones characterized Walker-Hynes's treatment of her as bullying.  Her complaint to HR did not complain of race or age discrimination or otherwise constitute a statutorily protected activity.

Likewise, the complaint made by Brown against Walker-Hynes does not appear to have involved statutorily protected activity.  Brown first called the LRSD's attorney, Eric Walker, and complained to him that Walker-Hynes was calling her and "yelling at me and complaining and accusing me of stuff . . . of changing passwords …. of not going out and doing my job.  It was just a lot of stuff going on at that time."  (Doc. No. 15-8, p 45).  When specifically asked in her deposition whether she had complained to Walker about age or race discrimination, her response was "I may have.  I just don't recall that whole conversation."[10]  Brown does say that she did claimed race and age discrimination in the written complaint that she filed with the Little Rock Education Association (LREA), but she does not submit the written complaint as evidence and cannot recall the outcome of that investigation.

Even assuming Brown did engage in statutorily protected activity by generally complaining about her supervisor's treatment of her, neither Plaintiffs have established that their

---

[10] In their response, Plaintiffs assert that "Ms. Brown believes that when she spoke with Mr. Walker, she told him that she believed that Ms. Walker-Hynes was treating her in a demeaning manner due to her race and age" (Doc. No. 21, p. 28), but there is no citation to any evidence to support that argument.

respective terminations would not have happened but for Walker-Hynes's having a desire to retaliate against them. The evidence—from Allen's investigation and report through the CAB hearing—establishes that Plaintiffs were terminated for legitimate reasons. Plaintiffs have not established that these reasons were pretext for retaliatory motivations.

Furthermore, Plaintiffs do not argue that anyone who was involved in the decision-making process that led to their terminations was motivated by a desire to retaliate other than Walker-Hynes. Plaintiffs argue that even though Walker-Hynes was not the ultimate decision maker, LRSD is liable for her actions under the "cat's paw" rule which provides that "if a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's paw" liability." *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014) (citing *Staub v. Proctor Hosp.,* 562 U.S. 411, 131 S.Ct. 1186, 1194, 179 L.Ed.2d 144 (2011)). Because Plaintiffs have not established that Walker-Hynes was motivated by a discriminatory bias, this theory does not apply. In addition, Plaintiffs have failed to show that the Poole, the CAB, or Key served as "the conduit, vehicle, or rubber stamp" by which Walker-Hynes achieved her alleged goal of having them fired.

<u>Conclusion</u>

Defendant's motion for summary judgment (Doc. No. 15) is GRANTED. A separate judgment will be entered.

IT IS SO ORDERED this 3rd day of August, 2021.

_____
UNITED STATES DISTRICT JUDGE